1996 SD 141

**Bret WEBB, Plaintiff and Appellant,**

**v.**

**UNION INSURANCE COMPANY,
Defendant and Appellee.**

No. 19650.

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1996.

Decided Dec. 11, 1996.

E. Steeves Smith of Tinan, Smith & Bucher, Mitchell, for plaintiff and appellant.

Gary J. Pashby and Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendant and appellee.

PER CURIAM.

[¶ 1]   Bret Webb (Webb) appeals a declaratory judgment that an insurance policy issued by Union Insurance Company (Union) did not cover Craig Beyer (Beyer) at the time of his motor vehicle accident with Webb. We affirm.

FACTS

[¶ 2]   Gus's Amoco (Amoco) owned a 1979 Jeep insured by Union.   Amoco sold the Jeep to Beyer and Beyer took possession the same day.   However, Amoco could not immediately locate the certificate of title to the Jeep and, for that reason, did not transfer title to Beyer on the day of the sale.   Amoco ultimately located the title and transferred it to Beyer some two weeks after the sale.   It was nearly three months after the sale before the state issued a certificate of title to the Jeep in Beyer and his wife's name.   In addition, the Jeep was not deleted from the Union insurance policy until approximately two months after the sale.

[¶ 3]   In the meantime, only a week after purchasing the Jeep, Beyer was involved in an automobile accident with Webb.   At the time of the accident it was covered by a policy of insurance with Greatway Insurance Company (Greatway) purchased by Beyer. Webb claimed injuries as a result of the accident and brought suit against Beyer. Greatway paid Webb the limits of its policy. However, Webb claimed damages in excess of the amount paid by Greatway and brought a declaratory judgment action against Union arguing that Beyer was merely a permissive operator of the motor vehicle insured by

Union. As a result, Webb claimed Beyer was insured under the terms of the Union policy issued to Amoco.[1]

[¶ 4] The case was submitted to the trial court under a stipulation of facts. The trial court issued findings of fact, conclusions of law and a declaratory judgment that the Union policy did not cover Beyer at the time of his accident with Webb. Webb appeals.

## ISSUE

[¶ 5] **Whether Union's insurance policy with Amoco covered Beyer at the time of the accident because Amoco failed to transfer title to the jeep to Beyer before the accident?**

■ [¶ 6] At the time of the accident, the Union insurance policy issued to Amoco provided coverage to the following insureds:

(1) You [i.e., Amoco] for any covered "auto."

(2) Anyone else while using with your permission a covered "auto" you *own,* hire or borrow[.] (emphasis added).

Webb argues that, at the time of the accident, Beyer was using, with Amoco's permission, a covered auto *owned* by Amoco. Therefore, Webb contends that Beyer was an insured under the terms of Union's policy with Amoco.

[¶ 7] Webb rests his contention that Amoco still owned the Jeep at the time of the accident on the fact that Amoco did not transfer title to the Jeep to Beyer until after the accident. In support of his contention, Webb relies principally on the plain language of SDCL 32–3–10 emphasized below:

*No person, except as provided in this chapter, obtaining or acquiring possession of a motor vehicle, trailer or semitrailer acquires any right, title, claim or interest in or to the motor vehicle, trailer or semitrailer, until he has been issued a certificate of title to the motor vehicle, trailer or semitrailer* or has received a manufacturer's statement of origin or a manufacturer's certificate of origin for the same. No waiver or estoppel may be operated in

favor of such person against a person having possession of the certificate of title or a manufacturer's statement of origin or a manufacturer's certificate of origin for such motor vehicle, trailer or semitrailer. (emphasis added).

As additional support for his argument, Webb also relies on this Court's holding in *Schroeder v. Herbert C. Coe Trust,* 437 N.W.2d 178, 184 (S.D.1989) that, "[l]egal ownership of a vehicle does not pass unless title to the vehicle is issued in the owner's name."

[¶ 8] Webb's argument requires this Court to resolve what constitutes "ownership" of an automobile within the meaning of the Union automobile insurance policy. This is a question of law reviewed de novo. *Colonial Ins. Co. of Cal. v. Lundquist,* 539 N.W.2d 871, 873 (S.D.1995).

[¶ 9] Webb would link the meaning of the term "ownership" in the Union policy with possession of legal title to a vehicle. However, there is a significant division of authority on this very point. As is well-summarized in 7 AmJur2d *Automobile Insurance* § 134 (1980):

The term "ownership", as used in automobile insurance policies, defies precise construction or definition, and the determination of whether ownership exists in an insured depends primarily on the factual situation involved in each case. Nevertheless, the courts have set forth certain principles in construing the term. *It has been held that it is not necessary that the title transfer formalities, established by state law relating to registration of automobile titles, be completed in order for the ownership of an automobile to shift from the seller to the buyer. But the contrary view also has been taken, and it has been held that legal title is essential to the "ownership" of a motor vehicle, with respect to automobile insurance coverage.* (emphasis added).

*See also* Debra E. Wax, Annotation, *What Constitutes Ownership of Automobile Within Meaning of Automobile Insurance Owner's Policy,* 36 ALR4th 7 (1985).

---

1. The parties to the declaratory judgment action agreed that the amount paid by Greatway would be applied as a credit to any amount Webb might receive from Union.

[¶ 10]  The foregoing split of authority appears to be resolved in South Dakota by the provisions of SDCL 32–3–11:

> A certificate of title issued under this chapter shall be evidence or indicia of ownership of the motor vehicle, trailer or semitrailer described on the title. *From the time of delivery of possession of a motor vehicle, trailer or semitrailer to a person acquiring the vehicle or any right of interest therein, the vehicle shall be at the risk of the person acquiring the vehicle. Such person together with any other person holding any lien or interest therein, shall have insurable interest in the motor vehicle, trailer or semitrailer and may enforce lawful contracts of insurance upon or affecting the motor vehicle, trailer or semitrailer or its maintenance, operation or use.* (emphasis added).

Notwithstanding this statute's initial reaffirmation that ownership of a motor vehicle goes hand in hand with legal title to the vehicle, the last two sentences appear to be a legislative attempt to reallocate risks normally associated with ownership from a titleholder to a purchaser where a purchaser takes possession of a motor vehicle before obtaining legal title, i.e., the very scenario presented in this case.  In this limited context, therefore, the South Dakota statutes on the transfer of motor vehicle titles appear to separate the concepts of ownership and title. This appears to be somewhat unique to South Dakota law.

[¶ 11]  While not identical to SDCL 32–3–11, Iowa law has a similar statutory provision that shifts liability for damages from the title-holder of a vehicle to a person who makes a bona fide purchase of the vehicle and takes possession.  The statute was interpreted and applied in *Hartman v. Norman*, 253 Iowa 694, 112 N.W.2d 374 (1962), a case almost identical to the matter at hand.  In *Hartman*, a buyer agreed to purchase a car and made a down payment.  Possession of the car was delivered and the buyer took and retained possession.  Seven days later, the buyer was involved in a collision with his newly purchased automobile.  For whatever reason, the title documents to the vehicle remained in the possession of the salesman and were not delivered until after the collision.  At the time, the Iowa Code provided:

> In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage.
>
> A person who has made a bona fide sale or transfer of his right, title, or interest in or to a motor vehicle and who has delivered possession of such motor vehicle to the purchaser or transferee shall not be liable for any damage thereafter resulting from negligent operation of such motor vehicle by another, *but the purchaser or transferee to whom possession was delivered shall be deemed the owner.*  The provisions of subsection 2 of section 321.45 shall not apply in determining, for the purpose of fixing liability hereunder, whether such sale or transfer was made.

*Hartman,* 112 N.W.2d at 379 (emphasis added).

[¶ 12]  The Iowa Supreme Court was ultimately called upon to resolve whether the seller of the automobile in *Hartman,* as the title-holder of the vehicle, remained liable for the damages resulting from the accident. Relying on the second paragraph of the above-quoted code provision, the Iowa court held:

> We can think of no purpose in the enactment of what is now the second paragraph of section 321.493 other than to cover situations such as we have in the case before us.  The statute is definite and specific.  It provides that a person who has made a bona fide sale and who has delivered possession to the purchaser shall not be liable for any damage thereafter resulting from negligent operation by another.  It also provides that subsection 2 of section 321.45 (the provision for proof of ownership by certificate of title) shall not apply in determining, for the purpose of fixing liability, whether such sale was made.  The question under this statute is not who may own the vehicle or have a lien according to the county records.  It is not who may owe for the purchase price or how the indebtedness is evidenced.  If there was a bona fide sale and delivery of possession, the statute

relieves the seller from liability for subsequent negligence of the operator.

Under the statute the title registration law is not applicable in determining liability in the case before us. Even before this statute an inference of ownership could be overcome as a matter of law. The official record raises an inference of ownership but it is at best a rebuttable presumption. *Hartman*, 112 N.W.2d at 380. *Hartman's* holding was subsequently reaffirmed by the Iowa Supreme Court in *State Auto. & Cas. Under. v. Farm Bureau Mut. Ins. Co.*, 257 Iowa 56, 131 N.W.2d 265 (1964).

[¶ 13] Despite the fact the statutory provision under scrutiny in *Hartman* was written in a slightly different context and for a slightly different purpose than SDCL 32–3–11, much of what was written by the Iowa Court in *Hartman* is just as applicable to SDCL 32–3–11. While the statute does not speak in specific terms of liability, it does speak in terms of the allocation of risks. What purpose would be served by the last two sentences of SDCL 32–3–11 other than to cover situations such as are present in the current case? The statute is definite and specific. It provides that, from the time of delivery of possession of a motor vehicle to a person acquiring the vehicle, the vehicle is at the *risk* of the person acquiring it. SDCL 32–3–11.[2] *All* of the risks associated with the vehicle, *without reservation*, are assigned to that person. Moreover, the person acquiring the vehicle is specifically granted an insurable interest in the motor vehicle and also granted the right to enforce lawful contracts of insurance upon the vehicle relating to its operation or use. Thus, like the Iowa statute in *Hartman, supra*, South Dakota law provides that a person who has made a bona fide sale and who has delivered possession of a vehicle to a purchaser is "risk free" and no

longer liable for any damage thereafter resulting from negligent operation by another.

[¶ 14] Based upon the foregoing, we hold that SDCL 32–3–11 narrows the definition of ownership of a motor vehicle where a vehicle is sold and possession transferred before a transfer of legal title. The definition is narrowed in the sense that the risks normally associated with ownership of the vehicle are transferred from the title-holder to the purchaser of the vehicle at the time of delivery of possession. This narrowing of the definition of ownership must be read into the Union insurance policy's use of the term "own" in defining its coverage. *See Farmland Ins. Companies v. Heitmann*, 498 N.W.2d 620, 623 (S.D.1993) (existing statutes must be read into insurance policies as if they are express provisions). In this instance, that means that, from the time of "delivery of possession" of the Jeep, Beyer was its owner for risk purposes. Since ownership passed from Amoco to Beyer at the time of delivery of possession, Amoco no longer owned the vehicle at the time of the accident. It follows that, at the time of the accident, Beyer was not an insured under the Union policy as a permissive user of the vehicle.

[¶ 15] Affirmed.

[¶ 16] MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., participating.

---

**2.** In this, the provisions of the chapter on title registration and transfers are consistent with the provisions of Article 9 of the Uniform Commercial Code. *See Farmers and Merchants Bank, Etc. v. Ksenych*, 252 N.W.2d 220, 222 (S.D.1977); *Island v. Warkenthien*, 287 N.W.2d 487, 488 (S.D. 1980) (title registration statutes and Article 9 of Commercial Code are, in certain particulars, in pari materia and should be construed consistent-

ly and harmoniously). In that vein, our result herein is not at odds with the risk of loss provisions of the Uniform Commercial Code. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Toman*, 351 N.W.2d 146 (S.D.1984) (seller of goods under Uniform Commercial Code retained insurable interest in goods sold, despite passage of title, where seller *never made tender of delivery* of goods before destruction).