2000 SD 80

In the Matter of the **CONDITIONAL USE PERMIT DENIED TO Mark MEIER** for Construction of an Animal Confinement Operation on Property Located in Southwest Quarter of Section 7 and the Southwest Quarter of Section 18, Township 104 North, Range 64 West, Aurora County, South Dakota.

Nos. 20924, 20950.

Supreme Court of South Dakota.

Argued Feb. 16, 2000.

Decided June 21, 2000.

Tim R. Shattuck and Elizabeth A. Lewis of Woods, Fuller, Shultz & Smith, Sioux Falls, for appellant Mark Meier.

Thomas H. Harmon of Tieszen Law Office, Pierre, for appellee Aurora County.

JOHNS, Circuit Judge

[¶ 1.] Mark Meier (Meier) appeals a circuit court judgment affirming the actions of the Aurora County Board of Commissioners, sitting as the Board of Adjustment (Board), in denying his application for a conditional use permit. By notice of review the Board challenges the constitutionality of SDCL 7–8–30. We affirm in part, reverse in part and remand.

## STATEMENT OF FACTS

[¶ 2.] In December 1997, Aurora County farmer Mark Meier applied to the Board for a conditional use permit allowing the construction of two hog confinement facilities housing approximately 6,600 pigs. The Board conducted a public hearing on December 30, 1997, but postponed further consideration until January 20, 1998. At the January 20 meeting, Meier and the opponents of the project were allowed to speak.[1] After less than an hour of discussion, the Board voted unanimously to deny the conditional use permit. In its resolution of denial the Board set forth the following reasons for its action:

(1) the proposed use would excessively impact the roads of the township, involve dangers of pollution and create an undue risk of offensive odors;

(2) the manure spreading contracts did not accurately reflect the land where the manure would be spread;

(3) the South Dakota Department of Environment and Natural Resources (DENR) did not have adequate policies, rules or resources to conduct unannounced spot checks or to carry out other enforcement activities to assure that violations of environmental laws would be prevented or detected;

(4) Aurora County did not have the proper staff or expertise to monitor compliance with environmental laws; and

(5) the granting of the conditional use would not promote the public health, safety, welfare, order, convenience or community prosperity of the County.

[¶ 3.] Meier appealed the Board's denial of a conditional use permit to circuit court pursuant to SDCL 7–8–30. The court conducted a trial de novo on December 3 and 4, 1998. Over these two days, Meier presented numerous witnesses and pieces of documentary evidence to establish his compliance with Aurora County Zoning Ordinance § 515. Ordinance 515 sets forth the performance standards for a conditional use permit for an animal feeding operation.

[¶ 4.] At the close of Meier's case, the court granted a motion for directed verdict in favor of Aurora County. The court concluded Meier failed to establish a prima facie case as he: had not submitted a written animal waste management system plan to DENR; had not applied to DENR for coverage under the General Water Pollution Control Permit For Concentrated Swine Feeding Operations; had not obtained or applied for a storm water permit from DENR; and had not presented a nutrient management plan to the court which would assure that offensive odors and runoff would be kept to a minimum— specifically, the plan failed to address the minimization of offensive odors emanating from the hog barns.

## ISSUES AND ANALYSIS

[U]nder SDCL ch. 11–2, the South Dakota Legislature has created an entity called a county planning commission. SDCL 11–2–2. The planning commission has been authorized to prepare a comprehensive plan for the County. SDCL 11–2–11. Zoning ordinances and other controls deemed necessary are included as adjunct to and in accordance with the comprehensive plan. *Id.*

*Coyote Flats v. Sanborn County Com'n,* 1999 SD 87 ¶ 9, 596 N.W.2d 347, 350. *See also* SDCL 11–2–1(3) for the definition of "comprehensive plan."

---

1. Approximately eighty people attended the Board of Adjustment meeting.

[¶ 5.] On October 1, 1996, Aurora County adopted its zoning ordinance per SDCL ch. 11–2. The real property where Meier wishes to place his hog confinement facility is zoned as an agricultural district.

The intent of Agricultural Districts (AG) is to protect agricultural lands and lands consisting of natural growth from incompatible land uses in order to preserve land best suited to agricultural uses and land in which the natural environment should be continued and to limit residential, commercial, and industrial development to those areas where they are best suited for reasons of practicality and service delivery.

Aurora County Zoning Ordinance § 501. Meier intends to conduct an animal feeding operation,[2] which is not a permitted use under § 503 but is a conditional use under § 507. "After the provisions of this Ordinance relating to conditional uses have been fulfilled, the Planning Commission [*i.e.,* Board of Adjustment] may permit as conditional uses in Agricultural Districts (AG): 18. animal feeding operations." Aurora County Zoning Ordinance § 507. A "conditional use" is defined in the definitions portion of the Aurora County Zoning Ordinance as:

a use that would not be appropriate, generally or without restriction, throughout the zoning district, but which, if controlled as to number, area, location or relation to the neighborhood, would promote the public health, safety, welfare, morals, order, convenience, appearance, prosperity or general welfare. Such uses may be permitted in such zoning district as conditional use is made in this Ordinance.

§ 1107B is the general section dealing with conditional uses, it provides:

The Board of Adjustment shall have the power to hear and decide, in accordance with the provisions of this ordinance, requests for conditional uses or for decisions upon other special questions upon which the Board of Adjustment is authorized by this ordinance to pass; to decide such questions as are involved in determining whether conditional uses should be granted; and to grant conditional uses with such conditions and safeguards as are appropriate under this ordinance, or to deny conditional uses when not in harmony with the purpose and intent of this ordinance. A conditional use shall not be granted by the Board unless and until:

1.  A written application for a conditional use is submitted, indicating the section of this ordinance under which the conditional use is sought and stating the grounds on which it is requested; [sic][.]

2.  Notice of public hearing shall be given at least fifteen (15) days in advance by publication in a newspaper of general circulation. The owner of the property for which conditional use is sought or his agent shall be notified by mail.

3.  A notice shall be posted in a conspicuous place on or near the property upon which action is pending. Such notice shall be not less than seventeen (17") in height and eleven (11") in width with a white background and black letters not less than one and one inch (1") in height. Such posted notice shall be so placed upon such premises that it is easily visible from the road and shall be so posted at least seven (7) days before the date of such hearing. It shall be unlawful for any person to remove, mutilate, destroy or change such posted notice prior to such hearings.

4.  The public hearing shall be held. Any party may appear in person, or by agent or attorney; [sic][.]

---

2.  An "animal feeding operation" is defined under the definitions portion of the Aurora County Zoning Ordinance as "a facility where more than eight hundred (800) animal units are confined at an operation."

5. The Board of Adjustment shall make a finding that it is empowered under the section of this ordinance described in the application to grant the conditional use, and that the granting of the conditional use will not adversely affect the public interest; [sic][.]

6. Before any conditional use is issued, the Board of Adjustment shall make written findings certifying compliance with the specific rules governing individual conditional uses and that satisfactory provisions and arrangement has been made concerning the following, where applicable:

a. ingress and egress to property and proposed structures thereon with particular reference to automotive and pedestrian safety and convenience, traffic flow and control, and access in case of fire or catastrophe;

b. off-street parking and loading areas where required; with particular attention to the items in (a) above and the economic, noise, glare or odor effects of the conditional use on adjoining properties and properties generally in the district;

c. refuse and service areas, with particular reference to the items in (a) and (b) above;

d. utilities, with reference to locations, availability, and compatibility;

e. screening and buffering with reference to type, dimensions, and character;

f. signs, if any and proposed exterior lighting with reference to glare, traffic safety, economic effect and compatibility and harmony with properties in the district;

g. required yards and other open spaces; and

h. general compatibility with adjacent properties and other properties in the district.

§ 515 of the zoning ordinance sets forth "performance standards" for commercial feedlots and animal feeding operations and states:

a. Animal Feeding Operations shall submit animal waste management system plans and specifications for review and approval prior to construction and a Notice of Completion for a Certificate of Compliance, after construction, to the South Dakota Department of Environment and Natural Resources.

b. Prior to construction, such facilities shall obtain a storm water permit for construction activities from the South Dakota Department of Environment and Natural Resources. The storm water pollution prevention plan required by the permit must be developed and implemented upon the start of construction.

c. Animal waste facilities shall be no less that six hundred and sixty (660) feet from adjoining property lines and domestic ground and surface water supplies.

d. Applicants must present a nutrient management plan which will assure offensive odors and runoff will be kept to a minimum. Examples of such management shall include at least:

1. Proposed maintenance of holding ponds.

2. Nutrient transportation equipment free of leaks or spillage hazards.

3. Land application process and/or methods.

4. Legal description and map of area to be utilized for nutrient application.

e. Animal waste facilities shall be located no closer than two (2) miles from any incorporated municipality or rural residential district.

f. Animal waste facilates shall be located no closer than one (1) mile from any residential dwelling, one dwelling unit is allowed on the facility site. The owner of a residential dwelling

may request the Planning Commission [*i.e.,* Board of Adjustment] to review the facility and the Commission [*i.e.,* Board] may, by variance, waive or decrease the required separation distance. The waiver must then be recorded with the County Register of Deeds in order that any future owners can be informed.[3]

g. Animal waste shall be transported no further than five (5) miles from the point of origination for land application.

Unfortunately the Aurora County Zoning Ordinance does not define the term "performance standards" as used in § 515. This has caused some of the confusion in this case as the trial court determined that Meier would be entitled to a conditional use permit if he satisfied all of the conditions of § 515. Although this ruling should have excluded many of the reasons the Board gave for denying Meier's application, the court also denied Meier's motions in limine to exclude from consideration any factors not found in § 515.

[¶ 6.] Meier argues that the trial court erroneously denied his motions in limine. He contends the only relevant considerations for the grant or denial of his permit are those factors set forth in Aurora County Zoning Ordinance § 515. He also contends he established a prima facie case and, therefore, the trial court erroneously granted the directed verdict denying his conditional use permit application. We hold: that the Board should determine the permit request in light of all relevant factors provided for under the ordinance and not just the performance factors found in § 515; that the trial court correctly denied many, but not all, of Meier's motions in limine; and that the trial court incorrectly granted a directed verdict.

[¶ 7.] Meier's appeal to the circuit court was filed pursuant to SDCL 7–8–30 which provides in part that "[a]ll appeals thus taken to the circuit court shall be docketed as other causes pending therein and the same shall be heard and determined de novo." The trial court opined that a trial de novo, in its strict sense, violated the constitutional doctrine of separation of powers as it would require him to substitute his judgment for that of the Aurora County Commissioners. The Board, by notice of review, challenges the constitutionality of SDCL 7–8–30. The Board contends that unless this Court interprets SDCL 7–8–30 in the same sense that we have interpreted SDCL 13–46–6 regarding appeals from school boards, SDCL 7–8–30 is unconstitutional. We find that it is not necessary for us to reach this issue since the trial court determined the legality of the Board's decision and did not reach any conclusion based on the wisdom of the decision. *See Coyote Flats, supra* (a case involving a special use permit application for a hog confinement facility); *Schrank v. Pennington County Bd.,* 1998 SD 108, 584 N.W.2d 680.

[¶ 8.] **Did the trial court err when it limited its consideration to the performance standards of § 515?**

[¶ 9.] The trial court did not have the benefit of our decision in *Coyote Flats* at the time it tried this matter. There we held that factors such as the location of neighbors to the proposed hog confinement facility, the effect of the operation on roads in comparison to what tax revenue the operation would generate, the potential devaluation of surrounding real estate, the presence of noxious odors and the potential for water pollution were all relevant and reasonable factors for the commission to consider. *See Coyote Flats,* 1999 SD 87 at ¶ 28, 596 N.W.2d at 353.

[¶ 10.] The question of whether the decision of the Board and the trial court is limited to consideration of the factors in § 515, is one of statutory interpretation. It involves consideration of § 515 as well as §§ 507 and 1107 of the Aurora County

---

3. Section 1107C of the Aurora County Zoning Ordinance provides that the Board of Adjustment, not the Planning Commission, grants variances.

Zoning Ordinance and the definition of "conditional use" found therein.

"The purpose of rules regarding the construction of statutes is to discover the true intention of the law, and said intention is to be ascertained by the court primarily from the language expressed in the statute. In applying legislative enactments, we must accept them as written. The legislative intent is determined from what the legislature said, rather than from what we or others think it should have said.

\* \* \*

One of the primary rules of statutory ... construction is to give words and phrases their plain meaning and effect. This court assumes that statutes mean what they say and that legislators have said what they meant. When the language of a statute is clear, certain and unambiguous, there is no occasion for construction, and the court's only function is declare the meaning of the statute as clearly expressed in the statute."

*South Dakota SIF v. CRE*, 1999 SD 2, ¶ 17, 589 N.W.2d 206, 209 (quoting *Delano v. Petteys*, 520 N.W.2d 606, 608 (S.D. 1994)).

[¶ 11.] We hold that § 515 does not limit the Board's discretion for the following reasons. First, the definition of "conditional use" found in the definitions portion of the Aurora County Zoning Ordinance and § 1107B of the ordinance setting the conditions for granting a conditional use establish that the factors to be considered in the decision to grant a conditional use are broader than those set forth in § 515 alone. Second, while § 515 specifically addresses standards for animal feeding operations, it does not limit the decision to grant or deny conditional use to consideration of those standards. Third, § 507 clearly states that only "[a]fter the provisions of *this Ordinance* relating to conditional uses have been fulfilled, the Planning Commission [i.e., Board of Adjustment] may permit as conditional uses

in Agricultural Districts ... animal feeding operations." (emphasis added).

[¶ 12.] Section 515 establishes specific standards that one must meet either before the issuance of a permit or after, but it does not preclude other considerations. We interpret factors (c) through (f) of § 515 as being conditions that must be met prior to issuance of the permit and factors (a) and (b) as ones which must be met prior to the operation of an animal feeding operation. Our conclusions are supported by the very concept of a conditional use which is "a land use which because of its unique nature is compatible with the permitted land uses in a given zoning district only upon a determination that the *external effects* of the use in relation to the existing and planned uses of adjoining property and the neighborhood *can be mitigated through imposition of standards and conditions.*" Alan C. Weinstein, Anderson's American Law of Zoning § 34.23, at 572–573 (4th ed. 1997). (emphasis added).

[¶ 13.] **Did the trial court err when it denied Meier's motions in limine?**

[¶ 14.] Meier filed six motions in limine prior to trial. In them he moved to exclude all evidence:

not related to whether his proposed hog confinement operation complies or would comply with the performance standards set forth in Aurora County Zoning Ordinance § 515; that his proposed operation would be an undue burden upon the taxpayers of Firesteel Township; that the proposed operation will meet the state permit requirements imposed and enforced by the DENR; that the proposed operation would create an undue risk of offensive odors in the neighborhood of the proposed operation other than evidence related to whether Meier's proposed operation will meet the setback requirements of § 515; that DENR does not have adequate policies, rules, and resources to conduct unannounced spot checks of animal feeding operations or to conduct other enforce-

ment activities in order to insure that violations of environmental laws and regulations are promptly detected and either punished or prevented; and that Aurora County does not have the professional staff or expertise or other resources necessary to enforce the State's environmental laws and regulations.

Meier argues that none of these considerations are relevant because they are not found in § 515. As we have already held, § 515 is not exclusive and, therefore, we reject Meier's argument.

[¶ 15.] We do agree with Meier, however, that lack of enforcement of environmental regulations by the State of South Dakota or the county is not a relevant consideration as the ordinances of Aurora County do specifically allow for animal feeding operations. If the statutes of this state and the ordinances of a county are not being enforced, then it is incumbent on each of us to see that they are. It is fundamentally unfair to deny a person a legal use of their property because a government is not enforcing its own laws. In this connection, we also note that the effect of an operation on the roads may not be a reason to deny a conditional use if the deleterious effects can reasonably be mitigated by conditions attached to the permit.

[¶ 16.] The ultimate issue is whether a conditional use should be permitted. As stated in § 507 a conditional use is one that is generally not appropriate in the zoning district. The ordinance goes on to state that such a use should be permitted if it will "promote the public health, safety, welfare, morals, order, convenience, appearance, prosperity or general welfare." Meier has the burden of showing that his proposed use promotes the public good. To do this, his initial burden of production before the Board is to show that he has

and/or will meet the performance standards and the other objective criteria established in the ordinance.[4] Once he makes such a showing it can be presumed that his proposed use is consistent with the public good and the burden of production switches to the opponents to offer evidence that the granting of the conditional use will adversely affect the public interest. § 1107B5. The burden of persuasion, however, lies at all times with Meier.

**[¶ 17.] Did the trial court properly grant a directed verdict?**

[¶ 18.] The trial court granted the Board a directed verdict at the close Meier's case-in-chief finding that Meier failed to make a showing that his nutrient management plan would assure that offensive odors would be kept to a minimum as required by § 515(d). Specifically, it found that Meier's nutrient management plan failed to address "the minimization of offensive odors emanating from animal waste contained in the hog barns."

[¶ 19.] When a trial court is faced with a motion for a directed verdict under SDCL 15–6–50(a) it "must determine whether there is any substantial evidence to sustain the action." *Veeder v. Kennedy*, 1999 SD 23, ¶ 25, 589 N.W.2d 610, 617 (quoting *Border States Paving, Inc. v. State, Department of Transportation*, 1998 SD 21, ¶ 10, 574 N.W.2d 898, 901). "The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor." *Id.* Further, the trial court, "is not free to weigh the evidence or gauge the credibility of the witnesses." *Haberer v. Rice*, 511 N.W.2d 279, 284 (S.D.1994). "Such motion necessarily admits the truth of plaintiff's evidence and every inference of fact that may be legitimately drawn therefrom." *North-*

---

4. We presume that since the county commission allowed for animal feeding operations in agricultural districts when it passed the ordinance, the commission considered such an enterprise to be in the public good when it is limited in number, area, place and by other appropriate limitations and conditions. *See East Manchester Tp. v. Dallmeyer*, 147 Pa. Cmwlth. 671, 609 A.2d 604 (1992); *Schatz v. New Britain Tp.*, 141 Pa.Cmwlth. 525, 596 A.2d 294 (1991); *Appeal of Baird*, 113 Pa. Cmwlth. 637, 537 A.2d 976 (1988).

*west Realty Company v. Perez,* 81 S.D. 500, 504, 137 N.W.2d 345, 347 (1965).

[¶ 20.] Meier and his witnesses did testify as to how the manure in the buildings would be handled. Each of the confinement buildings would have a scraper system. Meier's plan is to scrape the floors of the buildings twice a day. The waste would then be collected at the end of each building in a lift station where it would be pumped into a slurrystore containment structure. Meier also testified that he would plant trees around the facilities to help reduce any odors emanating from them. Accepting the truth of Meier's evidence and all legitimate inferences to be drawn therefrom, we conclude that the trial court erred in its finding.

### CONCLUSION

[¶ 21.] Recently, in *Coyote Flats, supra,* and *Schrank, supra,* we considered the scope of review to be used by a circuit court when considering an appeal under SDCL 7–8–30.

> SDCL 7–8–30 provides that all appeals taken to the circuit court from a decision by the county board "shall be heard and determined de novo." We held in *Sioux Valley Hosp. v. Jones County,* 309 N.W.2d 835, 837 (S.D.1981), that this standard means "the circuit court should determine anew the question . . . independent of the county commissioner's decision." We have also held in regards to SDCL 7–8–30 that "the trial court should determine the issues before it on appeal as if they had been brought originally. The court must review the evidence, make findings of fact and conclusions of law, and render judgment independent of the agency proceedings." *Keogan v. Bergh,* 348 N.W.2d 462, 464 (S.D.1984).

*Schrank,* 1998 SD 108 at ¶ 15, 584 N.W.2d at 682.

[¶ 22.] While we said the trial court should determine the question anew, we did not mean the court should sit as a "one man Board of Adjustment" and determine

if it would issue a conditional use permit in the first instance. As we also said in *Coyote Flats,* 1999 SD 87 at ¶ 42, 596 N.W.2d at 356–57, "[t]his Court [*i.e.,* the Supreme Court] is not warranted in directing the manner in which the Commission should exercise its legal discretion." The trial court is instructed to determine anew all matters of fact without ascribing any presumption of correctness to the Board's findings on the evidence. Once the trial court finds the facts, it is to determine if the actions of the Board were arbitrary or capricious, *i.e.,* whether the actions of the Board were "based on personal, selfish, or fraudulent motives, or on false information, [or] . . . characterized by a lack of relevant and competent evidence to support the action taken." *Coyote Flats,* 1999 SD 87 at ¶ 14, 596 N.W.2d at 351. If the court finds the decision was arbitrary or capricious, it should reverse the decision and remand to the Board for further proceedings. Otherwise, it must affirm.

[¶ 23.] Affirmed in part, reversed in part and remanded.

[¶ 24.] MILLER, Chief Justice, and AMUNDSON and KONENKAMP, Justices, concur.

[¶ 25.] GILBERTSON, Justice, concurs in part and dissents in part.

[¶ 26.] JOHNS, Circuit Judge for SABERS, Justice, disqualified.

GILBERTSON, Justice (concurring in part, dissenting in part).

[¶ 27.] I would affirm the Board's decision to deny Meier the conditional use permit and thus affirm the trial court. I would not remand for further proceedings before the Board as I see no reason to march the troops up the hill to again march them down. Procedurally Meier was allowed to present his evidence in full as to why the circuit court should reverse the Board. Meier failed in his attempt and the trial court granted a directed verdict against him at the close of his case.

To now remand for the remainder of the trial does no more than require the County to put on its evidence in a case that it has already won on the merits.

[¶ 28.] As to the legal issue, it is clear the granting of a conditional use permit is discretionary with the Aurora County Board of Commissioners as defined in the Aurora County Zoning Ordinances: "Such uses *may be permitted* in such zoning districts as conditional use is made in this Ordinance." (emphasis added). Given that the Board has this discretionary authority, "[t]his Court is not warranted in directing the manner in which the Commission should exercise its legal discretion." *Coyote Flats v. Sanborn County Comm'n,* 1999 SD 87, ¶ 42, 596 N.W.2d 347, 356–57 (citing *Breckweg v. Knochenmus,* 81 S.D. 244, 251, 133 N.W.2d 860, 864 (1965)). The only question the court must decide is whether the Board acted arbitrarily or capriciously. *See Schrank v. Pennington County Bd. of Comm'n,* 1998 SD 108, ¶¶ 16–19, 584 N.W.2d 680, 682–83 (a reviewing court must determine the legality, not the propriety, of a board's decision). If it did not, it must be affirmed.

[¶ 29.] "A decision is arbitrary and capricious when it is 'not governed by any fixed rules or standard.'" *Smith v. Canton Sch. Dist. No. 41–1,* 1999 SD 111, ¶ 9, 599 N.W.2d 637, 639–40 (quoting Black's Law Dictionary 104 (6th ed. 1990)). The fixed rules that guide the Board's decision here are provided by the Aurora County Zoning Ordinances, particularly § 515 governing performance standards for commercial feedlot operations and § 1107B governing conditional uses generally. The Board determined Meier's plan to construct two hog confinement facilities did not comply with the standards specifically addressing feedlot operations in Aurora County and set forth its reasoning in its denial of Meier's conditional use permit. There is no showing that this decision was made arbitrarily or capriciously. There is no reason to remand this action back to the Board that denied the permit in the first place to consider additional, broader elements when it denied the permit based on specific ones.

[¶ 30.] I agree with the majority that the constitutional issue need not be reached. "Principles of judicial restraint dictate that when an issue effectively disposes of the case, other issues that are presented should not be reached." *Poppen v. Walker,* 520 N.W.2d 238, 248 (S.D.1994). "This principle is especially applicable when constitutional issues are involved." *Id.* (citing *State v. Devericks,* 77 S.D. 509, 94 N.W.2d 348 (1959) (citing *Friese v. Gulbrandson,* 69 S.D. 179, 8 N.W.2d 438 (1943))).