Unified Judicial System

 

 
 In The Matter Of Approval Of Request For Amendment To Frawley
Planned Unit Development [2002 SD 2]
South Dakota Supreme Court
Appeal from the Circuit Court of The Fourth Judicial Circuit
Lawrence County, South Dakota
Hon. Timothy R. Johns, Judge
Brad P. Gordon of Fuller, Tellinghuisen, Gordon & Percy, P.C. Spearfish, South Dakota
Attorneys for appellee Frawley Ranches, Inc.
 
Reed C. Richards of Richards and Richards
Deadwood, South Dakota
Attorneys for appellants Robert & Gen Harlan
 
Considered on Briefs November 13, 2001
Opinion Filed 1/2/2002
#21783
GILBERTSON, Chief Justice
[Â¶1.] Frawley Ranches (Developer) was granted approval in 1992 for a Planned Unit Development (PUD) spanning 2,873.79 acres in Lawrence County, South Dakota.  While the PUD could potentially contain seventy-one home sites, Developer platted only eight.  Robert and Gen Harlan (Harlan) purchased one of the original eight sites in 1993.  On June 21, 2000, Developer applied for and received permission to amend the PUD, adding sixteen new sites and enlarging five of the original eight sites.  Harlan sued Lawrence County and Developer, alleging the PUD violated Lawrence County Ordinance 4.10.4 and that the PUD could no longer be amended because the ordinance allowing PUDs (Section 4.10) had been repealed by implication.  On appeal, the circuit court upheld the Lawrence County Commission decision.  We affirm.  
FACTS AND PROCEDURE
[Â¶2.]  In 1992, Developer submitted and received approval for a 2,873.79-acre PUD in Lawrence County.  The PUD is located in an A-1 General Agricultural District, which is required by county ordinance to apportion a minimum of forty acres per home site (allowing a maximum of seventy-one sites in Developerâs PUD).  âClusteringâ of the home sites is, however, allowed and Developer chose to plat only eight two-acre sites.  Harlan bought one of these original eight sites from Developer in 1993, only three of which were sold.
[Â¶3.]In 1998, Lawrence County adopted a new Comprehensive Plan, which did not specifically provide for PUDs.  Neither, however, did the Comprehensive Plan prohibit them.  Additionally, no change in the zoning ordinances that enforce the Comprehensive Plan had been proposed or adopted as of the date of this action.
[Â¶4.] On June 21, 2000, Developer applied for approval to amend its original PUD to include sixteen additional sites and to enlarge the five unsold lots.  Harlan opposed this amendment because Developer was not being required to plat all seventy[1]  potential home sites.  Nevertheless, the Lawrence County Commission determined that Developer had complied with the PUD ordinance requirements and approved the amendment.
[Â¶5.] Harlan appealed the Commissionâs decision to the Fourth Judicial Circuit pursuant to SDCL 7-8-27.  On October 31, 2000, the circuit court entered an order affirming the Commissionâs decision to approve the amendment.  Harlan appeals, raising the following issues:
1. Whether Developerâs PUD application is defective for failing to state the maximum number of home sites planned for development.
 
2. Whether Lawrence County Ordinance Section 4.10 was impliedly repealed by the adoption of the 1998 Comprehensive Plan, thereby precluding amendment of a previously approved PUD.
 
STANDARD OF REVIEW
[Â¶6.] Zoning ordinances, as legislative enactments, are interpreted consistent with the rules of statutory construction.  Cole v. Board of Adjustment of the City of Huron, 1999 SD 54, Â¶4, 592 NW2d 175, 176 (citations omitted).  âThe interpretation of an ordinance presents a question of law which we review de novo.  
When interpreting an ordinance, we must assume that the legislative body meant what the ordinance says and give its words and phrases plain meaning and effect.â    Id.  (internal and additional citations omitted).  
[Â¶7.]    âSDCL 7-8-30 provides an appeal from a decision of a county commission shall be heard and determined by the circuit court de novo.â  Coyote Flats, L.L.C. v. Sanborn County Commân, 1999 SD 87, Â¶7, 596 NW2d 347, 349.  In such an appeal, âthe circuit court should determine anew the question . . . independent of the county commissionerâs decision.â  In re Conditional Use Permit Denied to Meier, 2000 SD 80, Â¶21, 613 NW2d 523, 529 (quoting Sioux Valley Hosp. v. Jones County, 309 NW2d 835, 837 (SD 1981)).  While the circuit courtâs review of the agency decision is de novo, we have cautioned the courts to ânot sit as a one man Board of Adjustment.â  See In re Conditional Use Permit Denied to Meier, 2000 SD 80 at Â¶22, 613 NW2d at 529.  Rather, the circuit court must determine whether the county commissionâs decision was âarbitrary or capricious,â in which case the court âshould reverse the decision and remand to the Board for further proceedings.â  Id.  Conversely, if the court finds no evidence that the county commission made its decision with âpersonal, selfish or fraudulent motives, or false information,â the circuit court must affirm the commissionâs decision.  Coyote Flats, 1999 SD 87 at Â¶16, 596 NW2d at 351-52.
[Â¶8.] Likewise, "[t]his Court is not warranted in directing the manner in which the Commission should exercise its legal discretion."  Id. at Â¶42. 
In our review of the county commissionâs decision after an appeal to the circuit court, âwe apply the clearly erroneous standard to factual findings, but accord no deference to the legal conclusions of the circuit court.â  Id. at Â¶7 (citing Gregoire v. Iverson, 1996 SD 77, Â¶14, 551 NW2d 568, 570) (additional citations omitted).  
ANALYSIS AND DECISION
 [Â¶9.] 1.         Whether Developerâs PUD application is defective for failing to state the maximum number of home sites planned for development.
 
[Â¶10.]Harlan alleges that Developer did not comply with the requirements of the Lawrence County Zoning Ordinances when it submitted its original application for a PUD, thereby making the whole application defective.  Lawrence County Zoning Ordinance 4.10.4 provides, in pertinent part:
Administrative Procedure for a Planned Residential Development, Subject to Subdivision Regulations:  . . . There shall have been filed with the Planning Commission [a] written application for approval, which application shall be accompanied with the following information:  
A.    The application must be accompanied by an overall development plan showing the use or uses, dimensions, and locations of proposed sites, and information, as may be necessary to determine the contemplated arrangement or use, which makes it desirable to apply regulations and requirements differing from those ordinarily applicable under this Ordinance.  The applicant shall obtain written comments on the proposed development plan from the applicable Fire Department, the South Dakota State Board of Health, Utility Companies, and submit these with the application.
 
Therefore, the validity of Developerâs PUD application depends upon its compliance with this provision.      
[Â¶11.] The Commission maintains that this ordinance requires only a general master plan without specific details.[2]   As stated by the Office of Planning and Zoning Administrator, â[a]pproval of the PUD is approval of the concept and overall layout as submitted.â[3]   Indeed, the minutes of the June 17, 1992 County Commission meeting reflect a suggestion that, because only eight to eleven sites were being proposed, the original PUD should be scaled down.  Developer responded by stating:
[T]he primary reason the PUD was so large was due to the fact [we] wanted to offer more than just a couple hundred acres for recreational uses and it was difficult at this point in time to find all the feasible sites and [we] would like the flexibility to choose homesites where they are the most compatible.
 
Developer was clear from the onset about the likelihood of future development within the PUD.  The Commission reviewed and approved the application with full knowledge of Developerâs position.  As explained above, we will not direct the manner in which the Lawrence County Commission should exercise its legal discretion.
[Â¶12.]The Commission and the circuit court found that Developer complied with the PUD ordinance by submitting a written application accompanied by an overall development plan showing:  (1) the use or uses of the land; (2) the dimensions and locations of the proposed home/lot sites and other open spaces; and (3) written comments from the applicable Fire Department, the South Dakota Board of Health and the appropriate utility companies.  Developer recorded its overall plan of development with the Lawrence County Register of Deeds Office.  Developer presented the overall plan in two separate hearings before the Planning and Zoning Commission and the County Commission and Developer has not deviated from this overall plan.  We do not see that the circuit courtâs findings are clearly erroneous.
[Â¶13.] Furthermore, we do not read the ordinance to require maximum development as asserted by Harlan.[4]   There is nothing in the ordinance prohibiting the land apportionment per home site from being larger than the minimum forty acres.  Developerâs PUD consisted of 2,873.79 acres.  If this number is divided by the requisite minimum forty acres per home site, Developer would be allowed a maximum number of seventy-one sites in the PUD.  If, however, developer chose to allot sixty acres per site, the maximum number of sites to fit in the PUD would be forty-seven.  Clearly, under these specifications, seventy sites would not fit in a 2,873-acre PUD.[5]   It is illogical to require developers to plat sites they do not intend to develop. 
[Â¶14.] We understand that buyers are concerned with knowing how the land surrounding their property will be developed.  Buyers are entitled to rely upon representations made by a developer regarding the current and future development of the property.  While this reliance is somewhat limited, 
the marketing of PUDs . . . often places major emphasis upon the availability of open spaces and recreational areas 'built in' the community.  Therefore, the reasonable expectations of persons that the use of these areas will not be radically altered after they become residents of the PUD are relevant evidence when such an alteration is challenged.
 
Gray v. Trustees, Monclova Township, 313 NE2d 366, 369 (Ohio 1974).  See also Curtiss v. City of Cleveland, 144 NE2d 177 (Ohio 1957) (noting one who acquires property in PUD has no contractual or constitutional right to have zoning remain forever unchanged).  Developers should not be able to substantially alter plans already in existence, nor should they be able to develop the property in a piecemeal fashion that adversely affects prior purchasers.
[Â¶15.] In this case, however, Harlan was put on notice when he bought the land, by covenants in the warranty deed to his lot, that Developer reserved the right to designate up to as many as seventy home sites within the PUD.  Developer has not attempted to rewrite the PUD application altogether.  Instead, Developer has made only minor changes to a PUD master plan that clearly contemplated the likelihood that such changes would be made.  Here, there is not a legally sufficient cause for complaint when Developer has only platted and developed the twenty-four approved sites.  Additionally, the surrounding landownersâ interests are protected by the notice and public hearing required to amend a PUD.  See Lawrence County Ordinance 4.10.1(B).
[Â¶16.] 2.       Whether Lawrence County Ordinance Section 4.10 was impliedly repealed by the adoption of the 1998 Comprehensive Plan, thereby precluding amendment of a previously approved PUD.
 
[Â¶17.]  Harlan contends that the adoption of the 1998 Comprehensive Plan, a plan that did not include a provision relating to PUDs, repealed Section 4.10 of the Lawrence County Zoning Ordinances.  We disagree.  Repeal by implication occurs when two statutes, or legislative enactments, clearly conflict with one another. 
Where conflicting statutes appear, it is the responsibility of the court to give a reasonable construction to both, and to give effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable.  Repeal by implication will be indulged only where there is a manifest and total repugnancy.  If, by any reasonable construction, both acts can be reconciled, they should be. 
 
Karlen v. Janklow, 339 NW2d 322, 323 (SD 1983) (internal citations omitted) (emphasis added).
[Â¶18.] There is no repeal by implication in this case.  First, the Comprehensive Plan adopted by the Lawrence County Commission is not a legislative enactment.  As stated by the circuit court, â[a] comprehensive plan is only a general guide for the legislative body.  By definition it cannot bind the legislative body, as it is the ordinance that has the force of law and not the plan.â  See Kenneth H. Young, 1 Andersonâs American Law of Zoning Â§ 5.06 (4th ed 1996).  Second, even if we assume for the sake of argument that the 1998 Comprehensive Plan was on par with a zoning ordinance, it does not conflict with Section 4.10.  While the Comprehensive Plan does not specifically provide for PUDs, neither does it prohibit them.  As recognized by the circuit court, this does not constitute âmanifest and total repugnancy.â  See Karlen, 339 NW2d at 323.  Lawrence County Zoning Ordinance Section 4.10 will continue in effect until it is specifically repealed or another ordinance is adopted to replace it.  Therefore, we affirm the decisions of both the Lawrence County Commission and the circuit court in this case. 
[Â¶19.] SABERS and KONENKAMP, Justices, and GORS, Acting Justice, concur.
[Â¶20.] AMUNDSON, Justice, deeming himself disqualified, did not participate.

[1].         While the acreage would allow for seventy-one sites (2873.79 Ã· 40 = 71.84), the covenants for the property reserved the right of Developer to plat up to seventy sites.

[2].         Harlan sites Rockway v. Stefani for the proposition that PUDs cannot be approved on the âmaster planâ basis with a possibility for future amendment.  543 P2d 1089, 1093 (OrApp 1975).  The ordinance in that case, however, was significantly more detailed than the ordinance at issue here and the developer conceded that it did not comply with its specifications.  Id. at 1091.
 

[3].         Two other PUDs in Lawrence County have also been approved in this manner.

[4].         Presumably, Harlan would read Section 4.10.4(B) to require that every developer plat the maximum number of home sites allowable in every PUD and then require the developer to amend its application downward whenever it chose not to develop to maximum density.
 

[5].         In this case, part of Developerâs amendment was to increase the size of the five unsold lots.  This should be favorable towards Harlanâs position, as it indicates that the total number of possible sites would be lower than the seventy sites reserved in the covenants.