2002 SD 49

In the Matter of the CONDITIONAL USE PERMIT DENIED TO Mark MEIER for Construction of an Animal Confinement Operation on Property Located in the Southwest Quarter of Section 7 and the Southwest Quarter of Section 18, Township 104 North, Range 64 West, Aurora County, South Dakota.

No. 21983.

Supreme Court of South Dakota.

Considered on Briefs on Feb. 11, 2002.

Decided May 1, 2002.

December 1997 denial of the CUP. The first appeal[1] held, among other things, that the trial court improperly granted Board a directed verdict at the close of Meier's case in chief. The trial court's judgment was affirmed in part, reversed in part, and remanded to the trial court with instructions to "determine anew all matters of fact without ascribing any presumption of correctness to Board's findings on the evidence. Once the trial court finds the facts, it is to determine if the actions of Board were arbitrary or capricious." *Meier I,* 2000 SD 80 at ¶ 22, 613 N.W.2d at 530.

[¶ 2.] Upon remand the trial court held a hearing. Board did not submit evidence, but rested upon the original record. The trial court then entered a memorandum decision, findings of fact, conclusions of law and judgment which once again affirmed Board's decision to deny a CUP to Meier. We affirm.

Tim R. Shattuck, Elizabeth A. Lewis and Daniel J. Harmelink of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for appellant Mark Meier.

Thomas H. Harmon of Tieszen Law Office, Pierre, South Dakota, Attorneys for appellee Aurora County.

ECKRICH, Circuit Judge.

[¶ 1.] Mark Meier (Meier) appeals from a circuit court judgment which affirmed the Aurora County Board of Commissioners' (Board) decision to deny Meier a conditional use permit (CUP) for two large hog confinement operations. This is the second appeal arising from the Board's

## FACTS

[¶ 3.] While the facts are set forth fully in *Meier I,* a review is helpful. Aurora County adopted a zoning ordinance relating to "animal feeding (hog confinement) operations." The ordinance enunciates the process, procedures and standards to be followed by an applicant seeking approval of a CUP for a hog confinement operation. Section 515 of the ordinance establishes specific standards that the applicant must satisfy "either before the issuance of a permit or after, *but it does not preclude other considerations.*" (emphasis added). *Meier I,* 2000 SD 80 at ¶ 12, 613 N.W.2d at 528.[2]

---

1. *In re Conditional Use Permit Denied to Meier,* 2000 SD 80, 613 N.W.2d 523 (*Meier I*).

2. Upon remand, the trial court was instructed that its review of the Board's decision was not limited to consideration of the performance standards of § 515.

[¶ 4.] Examples of valid standards, general and specific, which are properly considered by Board before it makes a decision to grant or deny a CUP include:

1) A nutrient management plan "which will assure offensive odors and runoff will be kept to a minimum." Aurora County Zoning Ordinance § 515(d);

2) Whether the use (hog confinement operation) "if controlled as to number, area, location or relation to the neighborhood, would promote the public health, safety, welfare, morals, order, convenience, appearance, prosperity or general welfare." Aurora County Zoning Ordinance Definitions;

3) Whether the granting of a CUP will adversely affect the public interest. § 1107B5;

4) General compatibility with adjacent properties in the (agricultural) district. § 1107B6.h;

5) Protection of agricultural lands from incompatible land uses in order to preserve land best suited to agricultural uses and land in which the natural environment should be continued and to limit residential, commercial and industrial development to those areas where they are best suited for reasons of practicality and service delivery. Aurora County Zoning Ordinance § 501;

6) The location of neighbors to the proposed facility, the effect of the operation on roads in comparison to what tax revenue the operation would generate, the potential devaluation of surrounding real estate, the presence of noxious odors and potential for water pollution. *Meier I*, 2000 SD 80 at ¶ 9, 613 N.W.2d at 527 (citing *Coy-*

*ote Flats v. Sanborn County Com'n,* 1999 SD 87 at ¶ 9, 596 N.W.2d at 353).[3]

[¶ 5.] Clearly Board's decision was not limited to the specific factors found in § 515(d).

## STANDARD OF REVIEW

■■■ [¶ 6.] The applicable standard of review is whether the trial court's findings of fact were clearly erroneous. *Tisdel v. Beadle County Bd. of Com'rs,* 2001 SD 149, 638 N.W.2d 250; *Coyote Flats,* 1999 SD 87 at ¶ 7, 596 N.W.2d at 349. In other words we look at " 'whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed.' " *Tisdel,* 2001 SD 149 at ¶ 5, 638 N.W.2d at 252, 253 (citing Estate of Roehr, 2001 SD 85 ¶ 4, 631 N.W.2d 600, 601). "We however 'accord no deference to the legal conclusion of the circuit court' when the appeal involves a circuit court's review of a county board's decision." *Tisdel,* 2001 SD 149 at ¶ 5, 638 N.W.2d at 253 (quoting *Coyote Flats,* 1999 SD 87 at ¶ 7, 596 N.W.2d at 349).

## DECISION

■■ [¶ 7.] The appeal to circuit court is governed by SDCL 7–8–27 through 7–8–32. The circuit court conducts a review of the decision de novo; however, the review is limited to

"determine anew all matters of fact without ascribing any presumption of correctness to the Board's finding on the evidence.... Once the [t]rial [c]ourt finds the facts, it is to determine if the actions of the [b]oard were arbitrary or capricious, i.e., whether the actions of the [b]oard were based

---

**3.** The specific factors cited in subparagraph (vi) can fairly be said to be subsumed in subparagraphs (i)-(v).

on personal, selfish, or fraudulent motives, or on false information, [or] ... characterized by a lack or relevant and competent evidence to support the action taken."

Tisdel, 2001 SD 149 at ¶ 6, 638 N.W.2d at 253; (quoting Meier I, 2000 SD 80 at ¶ 22, 613 N.W.2d at 529).

[¶ 8.] The issue is whether Board's decision to deny the CUP was characterized by a lack of relevant and competent evidence to support the action taken. There is no evidence that Board's actions were based on personal, selfish or fraudulent motive or on false information.

[¶ 9.] Board did not introduce evidence at any stage of the circuit court appeal; neither at the original hearing in 1998, nor at the hearing on remand following Meier I.

[¶ 10.] Meier's argument follows a series of propositions, each of which must be resolved in Meier's favor for him to prevail. If any fail, Meier's argument unhinges.

[¶ 11.] Meier's argument is:

1) Meier need only prove that he has satisfied the standards of § 515(d) to prevail;

2) Meier proved a prima facie case which satisfies § 515(d);

3) Meier is thus entitled to a presumption that Meier is entitled to a hog confinement permit because it is in the public good;

4) Board offered no evidence to rebut the public good presumption, thus Meier is entitled to a permit.

[¶ 12.] Meier's propositions rely on a faulty interpretation of Meier I. This Court reversed the trial court because in the original circuit appeal the court limited its review to the § 515(d) factors. The trial court, however, was not bound exclusively to the § 515(d) performance standards.

[¶ 13.] After Board rested the trial court was no longer mandated to apply the well recognized standard of review for a directed verdict, that is, to accept the evidence "which is most favorable to the non-moving party ... and indulge all legitimate inferences, therefrom in his favor." Meier I, 2000 SD 80 at ¶ 19, 613 N.W.2d at 529 (citations omitted).

[¶ 14.] "It is well established on an appeal from the zoning commission, the party appealing has the burden of proof before the circuit court." Coyote Flats, 1999 SD 87 ¶ 8, 596 N.W.2d at 349. Meier I did not change this well established rule.

[¶ 15.] The Meier I court did not find that Meier was entitled to any evidentiary presumption. Meier's argument arises from dicta found in footnote 4 of the decision.[4] This Court did not say that Meier had sustained its burden for a permit under § 515(d) or otherwise. This Court simply ruled that Meier had presented sufficient evidence to avoid a directed verdict.

[¶ 16.] The evidence concerning which individuals or entities are or will be responsible for proper disposal of the 2.8 million gallons of liquid hog manure generated annually by the nearly 16,000 head housed in the confinement building was unclear and contradictory.

---

4. Footnote 4 said:

We presume that since the county commission allowed for animal feeding operations in agricultural districts when it passed the ordinance, the commission considered such an enterprise to be in the public good when it is limited in number, area, place and by other appropriate limitations and conditions. See East Manchester Tp. v. Dallmeyer, 147 Pa.Cmwlth. 671, 609 A.2d 604 (1992); Schatz v. New Britain Tp., 141 Pa. Cmwlth. 525, 596 A.2d 294 (1991); Appeal of Baird, 113 Pa.Cmwlth. 637, 537 A.2d 976 (1988). Meier I, 2000 SD 80 at ¶ 16, 613 N.W.2d at 529.

[¶ 17.] According to Meier's evidence each hog generates 1.2 gallons of manure per day. Each site will house between 3,201 live head for a total of 6,402 head. Each day these live hogs will excrete 7,682 gallons of manure onto the floor, through a slatting area. Then the manure will be scraped two times per day and pumped into two 1.6 million gallon holding tanks referred to as slurry stores. At a given time between the scraping operation each site will therefore have between 0—3,841 gallons of hog manure waiting to be scraped, pumped and stored. The trial court's finding among others that the structures will be "the source of intense offensive odors coming from the barn and other operational facilities at the site" is supported by the evidence.

[¶ 18.] Though Meier presented a wealth of evidence that the proposed conditional use was compatible with the proposed site he failed to present any evidence that Board's original decision to deny the CUP was based on a lack of relevant evidence.

[¶ 19.] Upon review of the record this Court does not find that the trial court's findings of fact are clearly erroneous. The trial court's findings support its judgment that Board's decision was not arbitrary or capricious. The judgment is affirmed.

[¶ 20.] GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, and GORS, Acting Justice, concur.

[¶ 21.] ECKRICH, Circuit Judge for SABERS, Justice, disqualified.

[¶ 22.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court did not participate.