#28047-aff in pt, rev in pt, & rem-JMK
**2017 S.D. 69**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ROBERT SURAT, DOROTHY
SURAT, KIRK SURAT, DESIREE
SURAT and SURAT FARMS, LLC,                    Appellees,

    v.

AMERICA TOWNSHIP,
BRULE COUNTY BOARD
OF SUPERVISORS,                                Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRUCE V. ANDERSON
Judge

* * * *

THOMAS W. CLAYTON
Sioux Falls, South Dakota                      Attorney for appellees.

JAY M. LEIBEL
Madison, South Dakota                          Attorney for appellants.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 24, 2017
OPINION FILED **11/08/17**

KERN, Justice

[¶1.]        The America Township Board of Supervisors (Board) downgraded a seven-mile stretch of road from full maintenance to minimum maintenance. A portion of the road provided the Surat family and Surat Farms, LLC (Surat) access to South Dakota Highway 50. Surat appealed the Board's decision to the circuit court. The circuit court reversed the Board's decision, and the Township appeals. We affirm in part, reverse in part, and remand with instructions to remand the matter back to the Board for a rehearing.

## Facts and Procedural History

[¶2.]        Surat owns farmland in Brule County extending into both America and Eagle townships. The property includes Surat's large agricultural operation and a family residence. Surat accesses its property from Highway 50 by traveling east down 264th Street approximately one and a quarter mile. Highway 50 runs through Chamberlain to the north and Platte to the south.

[¶3.]        On January 6, 2015, the Board discussed at its annual meeting whether to designate certain roads as "minimum maintenance." SDCL 31-13-1.1 provides that a township board may designate a road as minimum maintenance "if the board determines that the road or a segment of the road is used only occasionally or intermittently for passenger and commercial travel." Surat did not attend the Board's meeting, and the parties dispute whether the Board provided proper notice of the meeting as required by SDCL 1-25-1.1. The Board had previously discussed whether to downgrade 264th Street and other roads to minimum maintenance at prior meetings. The Board evaluated factors including:

the escalating costs to maintain the roads; potential liability concerns stemming from the condition of the roads; issues arising out of Google Maps providing misleading information as to whether roads existed or were traversable; and whether the roads serviced school bus or mail routes or provided access to a residence.

[¶4.] After discussion, the Board designated the section of 264th Street between Highway 50 and 352nd Avenue, as well as other roads not at issue in this appeal, as minimum maintenance. Members of the Board later posted signs on the section of 264th Street providing access to Surat's property to indicate its status as a minimum maintenance road.

[¶5.] On February 2, 2015, Surat filed an appeal to the circuit court. On February 16, 2016, the court held a trial and reviewed de novo the decision of the Board. At trial, Kirk Surat testified about his use of the road for primary access to his home and large farming operation. Kenneth Knutson, an officer for the Township, explained the Board's considerations in downgrading sections of 264th Street to minimum maintenance. On cross-examination, Knutson admitted that he did not consider "the amount of farm-related travel that might have gone on" in making his decision.

[¶6.] On August 31, 2016, the court issued findings of fact, conclusions of law, and an order reversing the Board's decision designating the portion of 264th Street between Highway 50 and 352nd Avenue as minimum maintenance. The court found that 264th Street was a "vital road for civilian use and farm businesses" for those in Eagle and America townships and that Surat used the road almost daily

for "medical appointments, groceries, church, driving children to school and going to work." The court also found that farm supply dealers, business customers, school buses, and mail carriers regularly used the road. Further, the court observed that the road provided the only route suitable for travel during inclement weather. Alternative routes appeared to be dirt roads that would quickly become treacherous when wet, exposing drivers to accidents, longer travel times, and substantial inconvenience. With reference to the Board's decision regarding the other roads affected by the January 6 meeting, the court remanded the matter to the Board for further consideration. The Township appeals, asserting three issues for our review:

1. Whether Surat had standing to appeal the decision of the Board to the circuit court.

2. Whether sovereign immunity applies to the Township.

3. Whether the circuit court possessed the authority to reverse the Board's decision.

## Analysis and Decision

1. *Whether Surat had standing to appeal the decision of the Board to the circuit court.*

[¶7.] SDCL 8-5-8 provides that "[f]rom all decisions, orders, and resolutions of the boards of supervisors of townships, there shall be allowed an appeal by any person aggrieved thereby upon compliance with this section." The Township does not dispute that Surat timely appealed. *See* SDCL 31-3-34. Instead, the Township claims that the "record is silent" as to any evidence demonstrating that Surat was aggrieved by the decision of the Board. Moreover, the Township argues SDCL 7-8-27 requires that "any person aggrieved" must allege pecuniary damages.

[¶8.]     However, our review of the record reveals Surat provided sufficient evidence that it was aggrieved by the Board's decision.  In its January 6, 2016 answers to the Township's interrogatories, Surat claimed that 264th Street provided a direct, year-round access route to the property for its farming operations; that alternative routes were inconvenient and dangerous for the operation of farming equipment; and that the road was used by vendors, mechanics, and for garbage disposal.  In its January 12 supplemental answer to the Township's interrogatories, Surat further claimed it used the road in taking care of daily needs, such as getting to work and driving children to school.  Even assuming that Surat must show pecuniary harm, Surat's supplemental answer and the testimony of Kirk Surat, a member of the LLC, highlighted expenditures by Surat to maintain the road and plow snow in the winter to ensure access.  Therefore, for purposes of SDCL 8-5-8, Surat has produced sufficient evidence that it was aggrieved by the decision of the Board, and Surat possessed standing to appeal.

> 2.     *Whether sovereign immunity applies to the Township.*

[¶9.]     The Township contends sovereign immunity bars any suit by Surat. The Township, citing *Hansen v. South Dakota Department of Transportation*, 1998 S.D. 109, 584 N.W.2d 881, argues sovereign immunity shields discretionary acts such as designating a road as minimum maintenance.  We have said that "[i]n the absence of constitutional or statutory authority, an action cannot be maintained against the State." *Truman v. Griese*, 2009 S.D. 8, ¶ 9, 762 N.W.2d 75, 78.  "It is settled that whether sovereign immunity applies is a question of law," which we review de novo. *Id.* ¶ 10, 762 N.W.2d at 78.

[¶10.]     Principles of sovereign immunity do not bar Surat's lawsuit. Article III, § 27 of the South Dakota Constitution establishes sovereign immunity for the State. *Unruh v. Davison Cty.*, 2008 S.D. 9, ¶ 8, 744 N.W.2d 839, 842. Article III, § 27 provides that "[t]he Legislature shall direct by law in what manner and in what courts suits may be brought against the state." S.D. Const. art. III, § 27. "In general, the doctrine of sovereign immunity as found in the common law and in our South Dakota Constitution means that the governing acts of the state, its agencies and other public entities cannot be attacked in court without the state's consent." *Wilson v. Hogan*, 473 N.W.2d 492, 494 (S.D. 1991). SDCL 8-5-8 authorizes appeal from "*all* decisions" by a township board of supervisors by "any person aggrieved thereby[.]" (Emphasis added.) Even assuming sovereign immunity would normally apply to the Board's decision to designate a road as minimum maintenance, the Legislature consented under SDCL 8-5-8 to be sued. Because Surat has standing to challenge the decision of the Board as an "aggrieved" person under SDCL 8-5-8, sovereign immunity does not bar the suit.

> 3.     *Whether the circuit court possessed the authority to reverse the Board's decision.*

[¶11.]     The circuit court, in reviewing Surat's challenge, conducted a de novo review of the Board's decision. SDCL 8-5-10[1] provides that an appeal made

---

1.     SDCL 8-5-10 provides:

    All appeals taken as prescribed by § 8-5-8 shall be heard and determined de novo. The circuit court may make a final judgment and cause the same to be executed or may send the same back to the board of township supervisors with an order how to proceed, and require the board to comply therewith by mandamus or attachment as for contempt.

pursuant to SDCL 8-5-8 "shall be heard and determined de novo." We have said that under SDCL 7-8-30, a statute using identical language, a "court should determine anew the question . . . independent of the county commissioner's decision." *Goos RV Ctr. v. Minnehaha Cty. Comm'n*, 2009 S.D. 24, 764 N.W.2d 704, 707. "In effect, it sits as another board . . . ." *Chicago & N.W. Ry. Co. v. Schmidt*, 85 S.D. 223, 227, 180 N.W.2d 233, 235 (1970). Contrarily, we have also stated that the circuit court should not sit in replacement as a one-person board. *See In re Conditional Use Permit Denied to Meier*, 2000 S.D. 80, ¶ 22, 613 N.W.2d 523, 530. Indeed, this Court has instructed lower courts in some cases to affirm the decision of a board unless the decision was arbitrary and capricious, in which case the lower court must reverse and remand to the board for further proceedings. *Goos RV Ctr.*, 2009 S.D. 24, ¶ 8, 764 N.W.2d at 707. We recently resolved these differing approaches in *South Dakota Department of Game, Fish & Parks v. Troy Township*, 2017 S.D. 50, 900 N.W.2d 840. In that case, we set forth appropriate standards of review for appeals from decisions of non-judicial entities when the Legislature has prescribed de novo review of their decisions.

[¶12.] Under *Troy Township*, we begin by asking whether the action taken by the Board can be characterized as "quasi-judicial." *Id.* ¶ 24, 900 N.W.2d at 850. If so, then the court applies de novo review. If not, then "the question before the circuit court [is] whether the [Board] 'acted unreasonably, arbitrarily, or . . . manifestly abused [its] discretion.'" *Id.* (quoting *Dunker v. Brown Cty. Bd. of Ed.*, 80 S.D. 193, 203, 121 N.W.2d 10, 17 (1963)). Various formulations of the term "quasi-judicial" exist. *Id.* ¶ 21, 900 N.W.2d at 849. None of these tests suggest that

the Board's decision here to designate a road as minimum maintenance was quasi-judicial. Rather, the decision is analogous to the decision to vacate a public highway. Like SDCL 31-13-1.1, under SDCL 31-3-6, a township "may" vacate a highway provided certain criteria are met, e.g., that doing so would serve the public interest. Such decisions are "one of policy," *Troy Twp.*, 2017 S.D. 50, ¶ 22, 900 N.W.2d at 850, and therefore are not quasi-judicial. Under *Troy Township*, the appropriate standard of review in this case is arbitrariness. "[A]rbitrariness review generally applies to the results of an *informal* process." *Id.* ¶ 33 n.11, 900 N.W.2d at 852 n.11 (quoting 33 Charles H. Koch, Jr., *Federal Practice & Procedure: Judicial Review of Administrative Action* § 8334 (1st ed.), Westlaw (database updated April 2017)).

[¶13.] Here, the Board's meeting "produc[ed] little in the way of a reviewable record" beyond a handwritten, one-page summary of the minutes. *See id.* Further, given Surat's absence, the proceedings can hardly be characterized as trial like. *See id.* However, in reviewing the decision of an informal proceeding, "a court is not to substitute its judgment for that of the agency." *Id.* ¶ 33, 900 N.W.2d at 852-53. We therefore examine whether

> the [Board] has relied on factors which [the Legislature] has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [board], or is so implausible that it could not be ascribed to a difference in view or the product of . . . expertise.

*Id.* ¶ 33, 900 N.W.2d at 853 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983)).

[¶14.]    The Township argues the circuit court could not require more of the Township than that it provide a "road [usable] under [expected] conditions," citing *Willoughby v. Grim*, 1998 S.D. 68, 581 N.W.2d 165, and SDCL 31-13-1, which provides that a township must maintain its roads. In *Willoughby,* we explained that townships "reserve discretion to determine the manner in which their roads should be repaired and maintained." *Willoughby,* 1998 S.D. 68, ¶ 11, 581 N.W.2d at 169*; see also Krier v. Dell Rapids Twp.*, 2006 S.D. 10, ¶¶ 17-18, 709 N.W.2d 841, 845-46 (holding that courts cannot dictate specific repairs such as by requiring a road be resurfaced with asphalt instead of gravel). Because "[n]o standards for township road repair and maintenance exist in our laws," the "[d]etails for repairing and maintaining secondary roads . . . remain within the conscientious discretion of the board of supervisors." *Willoughby*, 1998 S.D. 68, ¶ 10, 581 N.W.2d at 168-69.

[¶15.]    However, in addition to the requirement that the Township maintain its roads, the Board must also satisfy the criterion set out in SDCL 31-13-1.1 before it designates a road as minimum maintenance. SDCL 31-13-1.1 provides that before a board can designate a road as minimum maintenance, it must first "determine[] that the road or . . . segment . . . is used only occasionally or intermittently for passenger and commercial travel." It is unclear whether the Board even considered this requirement. The Township relies on Knutson's testimony at trial that the segments designated as minimum maintenance did not service mail or bus routes and were not adjacent to any residences. Yet Knutson admitted on cross-examination that he did not "take into consideration the amount of farm-related travel that might have gone on" or "travel on [the road]." Even if

the evidence showed a lack of passenger travel, the statute also required the Board to determine that *commercial* travel did not occur more than occasionally or intermittently. This it failed to do. Indeed, contrary to the Township's assertions, the circuit court found that Surat frequently used 264th Street for both personal *and* commercial purposes. As the court concluded, the road was "used much more than 'only occasionally or intermittently for passenger and commercial travel.'"

[¶16.] The Township takes issue with some of the circuit court's findings, highlighting a lack of evidence in the record supporting the circuit court's determination that 264th Street provided "both school bus and mail service to [Surat]." Even if the circuit court incorrectly found that the road serviced a mail route, it did not err in concluding the Board acted arbitrarily. Our review of the record indicates the Board did not consider the issue of traffic and ignored other evidence demonstrating the road was used more than occasionally or intermittently. As such, there was not "relevant and competent evidence to support the action taken" by the Board, *Coyote Flats*, 1999 S.D. 87, ¶ 14, 596 N.W.2d at 351, and it "entirely failed to consider an important aspect of the problem." *Troy Twp.*, 2017 S.D. 50, ¶ 33, 900 N.W.2d at 853. Therefore, the circuit court correctly held that the Board acted arbitrarily when it designated the road as minimum maintenance.

[¶17.] Nevertheless, the circuit court erred when it reversed the decision of the Board and ordered that the minimum maintenance signs be taken down. Because this case was decided prior to *Troy Township*, the court did not have the benefit of our recent clarification to the applicable standards of review.

Consequently, the court incorrectly applied de novo review to the Board's decision. Considering the nature of the question involved in this case and the evidentiary record, the circuit court should remand the matter back to the Board.

## Conclusion

[¶18.] Surat's lawsuit was not barred by lack of standing or by sovereign immunity. Additionally, the circuit court correctly concluded the Board acted arbitrarily because the Board did not find whether the portion of road designated as minimum maintenance was used more than "occasionally or intermittently," thereby failing to consider an important aspect of the issue under SDCL 31-13-1.1. However, the circuit court should have remanded the matter back to the Board for a rehearing. Therefore, we affirm the court's decision that the Board acted arbitrarily, reverse the court's order mandating that minimum maintenance signs be taken down, and remand with instructions that the circuit court remand the matter to the Board for a rehearing.

[¶19.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and WILBUR, Retired Justice, concur.

[¶20.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.